UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK JOSEPH MORRISSEY,

          Petitioner,

v.                                                                            Case No. 2:13-CV-298
                                                                              HON. R. ALLAN EDGAR

ROBERT NAPEL,

          Respondent.

_____/

## OPINION & ORDER

Petitioner filed this § 2254 petition for a writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights. In 2011, a jury convicted Petitioner of extortion (MICH. COMP. LAWS § 750.213) and use of a computer to commit a crime (MCL § 752.797(3)(f)). PageID.1, 186-87. For each offense, Petitioner was sentenced to a concurrent sentence of 60 to 240 months. PageID.1, 186. Petitioner remains in the custody of the Michigan Department of Corrections (MDOC).

Petitioner was convicted at trial for attempting to extort money from Steelcase, his former employer, by sending several threatening e-mails under the name "Crazy Chrissy" to Steelcase's board of directors. *People v. Morrissey*, No. 306901, 2012 WL 4039682, at *1 (Mich. Ct. App. Sept. 13, 2012). In those e-mails, "Chrissy" threatened to release allegedly harmful information related to Petitioner's termination from Steelcase. *Id.* To stop this information from being released, "Chrissy" demanded money and an ability for Petitioner to be put through the severance process. *Id.*

After his conviction, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. PageID.2, 187. The Court of Appeals denied his application and affirmed his convictions on September 13, 2012. PageID.2, 187. Petitioner then filed an

application for leave to appeal in the Michigan Supreme Court, which was denied on March 4, 2013. PageID.2, 187.

Petitioner then filed a motion for relief from judgment in the state trial court, but this motion was denied on December 12, 2013. PageID.188.  Petitioner appealed to the Michigan Court of Appeals, who denied his request for relief on August 7, 2014.  Petitioner did not appeal to the Michigan Supreme Court.

Petitioner did not appeal to the United States Supreme Court. Instead, he filed a habeas petition in this Court on September 26, 2013.  ECF No. 1.  Petitioner also filed an amended habeas application on January 17, 2014 (ECF No. 7), to include his motion for relief from judgment filings in the state court. Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

> I. The trial court prevented the defendant from introducing the PowerPoint into evidence of what the threat was.
>
> II. The trial court refused to adjourn the trial so a critical witness for the defense could be brought to trial.
>
> III. The defendant's right to present a defense was violated by the trial court's exclusion of evidence and witnesses critical to his defense.
>
> IV. No legitimate threat of injury was made, as re-exposing the already public PowerPoint information was of no consequence to Steelcase and could not cause them injury.
>
> V. There is significant evidence that the trial judge was prejudiced against the defendant based on his knowledge of disputed evidentiary facts.
>
> VI. The court abused its discretion in sentencing the defendant in OV 13 at 25 points because there were only restatements of the same alleged threat, not several independent ones.

-2-

VII. The trial court errored [sic] when it awarded Steelcase full restitution for investigation expenses they chose to spend that did not give rise to the conviction.

PageID.4-5, 7-8, 10-11, 13, 19-20, 189-190, 192-193, 195-196, 198.  Respondent filed a response to the amended petition on May 2, 2015. ECF No. 8.  On June 6, 2014, Petitioner filed a reply (ECF No. 10), and on August 20, 2014, Petitioner filed a supplemental brief in support of his reply (ECF No. 12).  The matter is now ready for a decision.

## I.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996.  PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law).  28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  A

decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme

Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme

Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the

case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5)

it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*,

271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable"

simply because that court decides, in its own judgment, that the relevant state decision applied

federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the

state court's application of clearly established federal law was "objectively unreasonable").  This

Court defers to state court decisions when the state court addressed the merits of petitioner's

claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510,

534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach

the question).  When applying AEDPA to state factual findings, factual issues by state courts are

presumed correct unless the petitioner rebuts the presumption with clear and convincing

evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

After applying the standards under AEDPA to Petitioner's case, this Court

concludes that Petitioner has not provided clear and convincing evidence that the state court

improperly applied clearly established federal law to the facts of Petitioner's case.

## II.

Petitioner has raised seven claims alleging that his constitutional rights were

violated.  Each issue is addressed separately.

### A. Admission of Evidence

Petitioner's first claim states that "[t]he trial court prevented the defendant from introducing the PowerPoint into evidence of what the threat was." PageID.4, 189.  Specifically, Petitioner claims that during his trial and throughout appellate review, "there were several different interpretations of what the actual alleged threat to Steelcase was," and Petitioner tried to explain that the "alleged threat was to re-expose the PowerPoint information." PageID.30, 1247.  However, the courts would not allow him to introduce this PowerPoint into evidence.  PageID.30-31, 1247.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 345 (2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly."  *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted); *see Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.

-5-

1994) (noting that state court errors pertaining to admission of evidence are only cognizable on habeas review if it denies the petitioner his fundamental right to a fair trial).

Petitioner has failed to show that this state law issue rendered his trial fundamentally unfair. In denying Petitioner's direct appeal, the Michigan Court of Appeals concluded that Petitioner's trial rights were not impinged by the court's decision not to introduce the Power Point into evidence:

> Defendant asserts that the trial court abused its discretion by excluding a Power Point presentation prepared by defendant that depicted his understanding of why and how he was fired from Steelcase.
>
> The decision to admit evidence is reviewed for an abuse of discretion. *People v. Lukity*, 460 Mich. 484, 488; 596 NW2d 607 (1999). A trial court abuses its discretion "when its decision falls outside the principled range of outcomes." *People v. Blackston*, 481 Mich. 451, 460; 751 NW2d 408 (2008). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v. Hine*, 467 Mich. 242, 250; 650 NW2d 659 (2002). Where an evidentiary decision involves a preliminary question of law, such as whether a rule of evidence precludes admissibility, the question of law is reviewed de novo. *People v. McDaniel*, 469 Mich. 409, 412; 670 NW2d 659 (2003).
>
> "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). We agree with defendant that the Power Point presentation was not hearsay because defendant did not seek to prove the truth of the matter asserted therein. The presentation considered of defendant's version of events relating to his termination from Steelcase. However, defendant did not seek to introduce the presentation to prove he was wrongfully terminated as described in the presentation. Instead, he sought to establish that the information was not threatening and could not pose a risk of "injury" to Steelcase within the meaning of MCL 750.213. Because defendant was not seeking to establish the truth of the contents contained in the Power Pont presentation, it did not constitute hearsay.

Nevertheless, we conclude that the trial court did not err in excluding the evidence as it was irrelevant and its probative value was substantially outweighed by the risk of confusion and the needless presentation of cumulative evidence.[2] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, defendant was charged with extortion on the theory that he threatened injury to Steelcase's property with the intent to extort money or compel action from Steelcase. MCL 750.213. The crime of extortion is complete at the time the threat is made. *People v. Percin*, 330 Mich. 94, 99; 47 NW2d 29 (1951). An overt act is not required, nor is the victim required to feel intimidated. *Id.*; *People v. Poindexter*, 138 Mich.App. 322, 332; 361 NW2d 346 (1984). Likewise, there is no requirement in the plain language of MCL 750.213 that defendant possess the means to accomplish his threat. In this case, the Power Point presentation was not the threat; the e-mails were the threat. The e-mails contained an express threat to make information regarding defendant's termination public, specifically information that Chrissy claimed would make Steelcase look like "morons," "anger [Steelcase's] current employees," "start up a scandal at Steelcase," and impede Steelcase's efforts at recruiting new employees. The e-mails were the threat and it was the e-mails that were relevant to determining whether defendant threatened "injury" to Steelcase's property. At most, the Power Point presentation contained the means by which defendant intended to bring ruination upon Steelcase. Whether the release of the information in the Power Point may or may not have accomplished the injury defendant threatened is irrelevant to whether he, in fact, threatened injury. Accordingly, the Power Point presentation was irrelevant and properly excluded. MRE 402.

Moreover, even if the Power Point was relevant, it was properly excluded under MRE 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony by the trial judge." *People v. Bahoda*, 448 Mich. 261, 291; 531 NW2d 659 (1995). In this case, the trial court determined that the Power Point presentation could confuse the

issues, pose difficulty in presenting the material to the jury, and was already incorporated in defendant's own testimony. Because the Power Point presentation had no bearing on whether the e-mails expressed a threat, the probative value of the presentation was minimal. Additionally, the information in the Power Point consisted of defendant's version of events surrounding his termination, facts to which he testified during trial. As such, introduction of the Power Point was the needless presentation of cumulative evidence. It also posed a risk of diverting the jury's attention from the criminal matters at issue by confusing them with irrelevant contentions from defendant's civil litigation.

We also reject defendant's contention that the Power Point presentation should have been admitted under MRE 106 because it was attached to one of his Crazy Chrissy e-mails. Because defendant did not raise this argument before the trial court, it is unpreserved, *People v. Aldrich*, 246 Mich.App. 101, 113; 631 NW2d 67 (2001), and reviewed for plain error affecting his substantial rights, *People v. Carines*, 460 Mich. 750m 763-764; 597 NW2d 130 (1999). Under MRE 106 "when a writing . . . or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." However, MRE 106 "does not automatically permit an adverse party to introduce into evidence the rest of a document once the other party mentions a portion of it." *People v. Herndon*, 246 Mich.App. 371, 412 n 85; 633 NW2d 376 (2001). Rather, MRE 106 logically limits the supplemental evidence to evidence that "ought in fairness to be considered contemporaneously with it." *Id.* MRE 106 is "designed to prevent unfairness which may result if a statement is taken out of context." See *Moody v. Pulte Homes, Inc*, 125 Mich.App. 739, 747; 337 NW2d 283 (1983), rev'd on other grounds 423 Mich. 150 (1985). Here, defendant did not seek to have the prosecutor introduce the Power Point at the time that she introduced the e-mails or to introduce the presentation in conjunction with the e-mails. MRE 106. Because defendant did not make a request "at that time," MRE 106 is inapplicable. Moreover, defendant has not shown that "fairness" required the contemporaneous consideration of the Power Point and the e-mails. The Power Point presentation was prepared weeks before the e-mails were sent and added nothing to the context of the e-mails that was not apparent from defendant's own testimony about his supposedly wrongful termination.

_____

-8-

> 2. Although the trial court based its decision mainly on hearsay grounds, this Court
> will affirm a court's decision where it reached the "right result for a wrong reason."
> *People v. Mayhew*, 236 Mich.App. 112, 118 n 2; 600 NW2d 370 (1999).

*Morrissey*, 2012 WL 4039682, at **3-4.   The appellate court's review of Petitioner's claim is

thorough and complete, and it does not contradict or unreasonably apply Supreme Court law to

the facts of Petitioner's case. *Bailey*, 271 F.3d at 655. As the appellate court noted, the Power

Point presentation was properly excluded, meaning Petitioner's trial was not fundamentally

unfair due to the exclusion of this Power Point.   Even though Petitioner continues to argue that

the "threat" in this case was the Power Point, not the e-mails, he has not demonstrated that his

trial was unfair due to the exclusion of this evidence. *See* PageID.30-36.   Accordingly,

Petitioner's first claim fails as it is not cognizable on habeas review.

## B. Adjournment

Petitioner's next claim is that the trial court abused its discretion when it "refused

to adjourn the trial so a critical witness for the defense could be brought to trial." PageID.5, 190.

Specifically, Petitioner claims the trial should have been adjourned so that Mr. Jim Hackett (the

CEO of Steelcase) could testify. PageID.37-38.   Petitioner believes his testimony was important

as it would ultimately allow additional e-mails (between Mr. Hackett and Petitioner) to be

introduced into evidence.   PageID.37-38.   Petitioner further states that these e-mails to Mr.

Hackett "would have shown that all correspondence, including the Chrissy e-mails, had the same

intent of trying to clear the defendant's name." PageID.38.   Moreover, Petitioner states that Mr.

Hackett would have been called to testify if the prosecutor did not persuade Petitioner's previous

attorney to release Mr. Hackett from his subpoena.   PageID.38.

"The decision whether to grant a motion for continuance is within the discretion

of the trial judge." *Powell v. Collins*, 332 F.3d 376, 396 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964)); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (noting that trial courts have broad discretion in deciding whether to grant a continuance). "Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." *Id.* (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also White v. Berghuis*, No. 2:12-CV-13680, 2014 WL 1304648, at *6 (E.D. Mich. Mar. 28, 2014) (citing *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) ("In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."). In addition, a habeas petitioner must show that he suffered actual prejudice as a result of the trial court's denial of his request for a continuance. *White*, 2014 WL 1304648, at *6 (citing *Burton*, 391 F.3d at 772 and *Powell*, 332 F.3d at 396). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Id.* (citing *Powell*, 332 F.3d at 396). Factors to consider in the deciding whether the denial of the continuance was proper are whether the defendant contributed to the situation giving rise to the delay, whether the delay was for a legitimate reason, and whether denial of the delay would cause identifiable prejudice to the defendant's case, for example. *Powell*, 332 F.3d at 396.

Petitioner raised this claim in his direct appeal to the Michigan Court of Appeals. The appellate court denied his claim for the following reasons, ultimately concluding that Mr. Hackett's testimony would not have positively contributed to Petitioner's defense:

-10-

Next, defendant asserts that the trial court should have sanctioned the prosecution by way of an adjournment for violation of MCL 767.40a(5) for failing to serve a witness whom defendant wanted to call. Defendant preserved the issue of whether an adjournment was appropriate by moving to have the case postponed until the witness in question could be located. *People v. Snider*, 239 Mich.App. 393, 421; 608 NW2d 502 (2000). A trial court's decision to deny an adjournment is reviewed for an abuse of discretion. *People v. Jackson*, 467 Mich. 272, 276; 650 NW2d 665 (2002). "In addition, a defendant must show prejudice as a result of the trial court's abuse of discretion." *Snider*. 239 Mich.App. at 421. However, insofar as defendant now argues that the prosecution violated MCL 767.40a(5) by not providing reasonable assistance in serving witnesses, defendant's claim is unpreserved because he failed to raise this issue before the trial court. See *People v. Dixon*, 217 Mich.App. 400, 409; 552 NW2d 663 (1996). Accordingly, defendant's claim relating to MCL 767.40a(5) is unpreserved and reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763-764.

Here, defendant requested an adjournment until the CEO of Steelcase could be located and served for trial. Pursuant to MCR 2.503(C)(2), "[a]n adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." In asking for an adjournment, defendant indicated that the witness would testify to the contents of e-mail correspondence with defendant dating from 2005 and early 2009. Based on this information, the trial court reasonably determined that "at best [the witness'] testimony would be irrelevant and at worst a waste of time and needless harassment." We agree that previous e-mail correspondence had no bearing on whether threatening e-mails sent by defendant constituted extortion. Additionally, defendant's previous counsel (from before defendant decided to proceed in propria persona) stated that testimony from the witness in question "would be a disaster" for defendant's case. Based on these facts, we conclude that the witness' testimony was not material to the proceedings and it was not an abuse of discretion to decline defendant's motion for an adjournment. Likewise, defendant suffered no prejudice from denial of an adjournment which merely had the effect of precluding irrelevant hearsay evidence which would have damaged his case. *People v. Coy*, 258 Mich.App. 1, 18-19; 669 NW2d 831 (2003).

-11-

To the extent defendant now argues an adjournment was an
appropriate sanction for the prosecution's noncompliance with MCL
767.40a(5), we disagree. Contrary to defendant's argument, MCL
767.40a(5) does not require "numerous or diligent" efforts by the
prosecution. Instead, MCL 767.40a(5) requires, upon request from
defendant, "reasonable assistance" in locating and serving witnesses.
*People v. Koonce*, 466 Mich. 515, 521; 648 NW2d 153 (2002).
Although the trial court did not expressly consider MCL 767.40a(5),
in denying defendant's motion for an adjournment, the court appeared
to conclude that the prosecution offered reasonable assistance by
particularly noting that "[t]he prosecution is doing what it can to
assist you in this regard." A trial court's determinations regarding the
prosecution's efforts to produce witnesses will not be reversed unless
clearly erroneous. *People v. Watkins*, 209 Mich.App. 1, 4; 530 NW2d
111 (1995). Based on the record, we cannot conclude that the trial
court clearly erred in concluding the prosecution was making
reasonable efforts. There was no violation of MCL 767.40a(5) and no
need for the sanctions that defendant now insists were appropriate.
Moreover, defendant was not prejudiced by the prosecution's failure
to serve the witness in question because, as discussed, the witness'
testimony constituted irrelevant, damaging hearsay.

*Morrissey*, 2012 WL 4039682, at *5. The appellate court's decision is thorough and complete,
and it does not improperly apply or contradict Supreme Court precedent. *Bailey*, 271 F.3d at 655.

Nonetheless, Petitioner claims that Mr. Hackett was crucial to his defense. At
trial, Petitioner stated that he wanted to question Mr. Hackett about e-mails between them in
2009 (before the Crazy Chrissy e-mails were sent to Steelcase), and ultimately show that Mr.
Hackett understood that those e-mails were not intended to extort the company. PageID.37-39,
701-702, 1247-1248 (noting that Mr. Hackett once told Petitioner's previous attorney that "the
C[h]rissy e-mails were 'too old to be true' and they had a 'comic book nature to them.'").

Despite his assertions, Petitioner has not shown that he suffered actual prejudice
by being denied a continuance for purpose of subpoenaing Mr. Hackett. As the trial court stated,
and the appellate court reiterated, "at best Mr. Hackett's testimony would be irrelevant and at

-12-

worst a waste of time and needless harassment." PageID.703; *Morrissey*, 2012 WL 4039682, at

*5. The testimony would, in fact, likely harm Petitioner's defense by showing that Petitioner sent

these e-mails to Steelcase to make Steelcase "do something they didn't want to do," thereby

enhancing the prosecution's evidence in support of a conviction for extortion. PageID.702. As a

result, Petitioner was not prejudiced by the trial court's decision to deny a continuance for

purposes of obtaining Mr. Hackett for trial. Accordingly, Petitioner's second claim is denied.

### C. Right to Present a Defense

Petitioner's third claim is that his "right to present a defense was violated by the

trial court's exclusion of evidence and witnesses critical to his defense." PageID.7, 192.

Petitioner claims that he had two witnesses in the courtroom during trial that would have testified

regarding his difficulty obtaining employment, and that this testimony was important because it

demonstrates his motive for sending the e-mails to Steelcase. PageID.40-41. In addition,

Petitioner claims that the trial court prevented him from presenting a defense by: (1) not

admitting his Power Point into evidence, (2) declining to admit that a previous lawsuit was

already made public, (3) not adjourning the trial to obtain Mr. Hackett as a witness, (4) refusing

to let him show a visual history of the events leading up to this case, (5) not allowing him to

impeach a prosecutor's witness, (6) having a biased judge conduct his trial, and (7) allowing the

prosecution to disparage him. PageID.1248.

While Respondent raises the issue of procedural default, the Court will address

Petitioner's claim on the merits. "If a petitioner does not satisfy the procedural requirements for

bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings,

as state law may require – procedural default will bar federal review." *Magwood v. Patterson*,

561 U.S. 320, 130 S. Ct. 2788, 2801 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

       "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).  "A defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* (quoting *Rock*, 483 U.S. at 55 (quoting *Chambers*, 410 U.S. at 295) (internal citation omitted)).  Consequently, judges have "broad latitude under the Constitution" to make rules that exclude evidence from criminal trials, and they do not "abridge an accused's right to present a defense" in so doing as long as the rules are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Id.* (citing *Rock*, 483 U.S. at 58; *Michigan v. Lucas*, 500 U.S. 145, 151 (1991)).  Excluding evidence is only arbitrary or disproportionate "where it has infringed upon a weighty interest of the accused." *Id.*

-14-

Petitioner raised this claim in his direct appeal to the Michigan Court of Appeals, and the court denied it for the following reasons:

> Defendant argues that the trial court committed numerous errors which violated defendant's right to present a defense relating to his "intent" and whether Steelcase was threatened with "injury." In particular, defendant argues that trial court denied him his right to present a defense by excluding the Power Point, not enforcing an order to have witnesses served, declining to stipulate that court records are publically available, and excluding the testimony of two witnesses who would have testified to defendant's difficulty in obtaining employment after he was terminated from Steelcase. Defendant did not challenge the trial court's evidentiary decisions on the grounds that they violated his right to present a defense. Accordingly, defendant's due process claim is unpreserved. See *People v. Geno*, 261 Mich.App 624, 630; 683 NW2d 687 (2004) (finding evidentiary objections were insufficient to preserve a constitutional claim). Whether defendant's right to present a defense was violated presents a question of law which this Court reviews de novo. *People v. Unger*, 278 Mich.App 210, 247; 749 NW2d 272 (2008). However, unpreserved constitutional claims are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763-764.
>
> "A criminal defendant has a state and federal constitutional right to present a defense." *Unger*, 278 Mich.App at 250. However, these rights are not absolute and "may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* "The accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Hayes*, 421 Mich. 271, 279; 364 NW2d 635 (1984) (citation omitted). State criminal trial and procedure rules "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Unger*, 278 Mich.App at 250 (citation omitted). However, "erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Montana v. Egelhoff*, 518 U.S. 37, 53; 116 S Ct 2013; 135 L.Ed.2d 361 (1996).
>
> As previously discussed, the Power Point presentation was properly excluded because it was irrelevant to whether defendant intended a

threat of injury. Further, it posed a risk of confusing the jury and it was cumulative. Similarly, the 2005 and early 2009 e-mail correspondence was irrelevant. Accordingly, the trial court did not err in declining defendant's request for an adjournment until the witness could be located or in excluding defendant's testimony about the e-mail correspondence. Defendant was not denied the right to present a defense by the proper exclusion of inadmissible and irrelevant evidence. *People v. Danto*, 294 Mich.App 596, 604; — NW2d — (2011). Likewise, defendant's difficulty in gaining employment had no bearing on whether he sent threatening e-mails to Steelcase with the intent to extort money or compel some action from Steelcase. The trial court did not violate defendant's constitutional rights by excluding this irrelevant testimony from the two proffered witnesses. Moreover, not all defenses are recognized as viable defenses in Michigan. See *People v. Kevorkian*, 248 Mich.App 373, 442-443; 639 NW2d 291 (2001). In arguing for the admission of evidence, defendant insisted it was for the jury to decide whether his efforts at extortion were necessitated by a need to provide for his family. The need to provide for one's family constitutes neither duress nor necessity and is not a defense in Michigan. See *People v. Dupree*, 284 Mich.App 89, 100; 771 NW2d 470 (2009) (duress involves threat of death or serious bodily harm); *People v. Hubbard*, 115 Mich.App 73, 77-78; 320 NW2d 294 (1982). Testimony concerning a defense that has not been recognized by the Legislature is properly excluded. *Kevorkian*, 248 Mich.App at 442-443. Moreover, defendant did, in fact, testify and argue in his closing statement, that he did not have the intent to commit extortion and that he never threatened "injury" to Steelcase. Because he in fact presented this defense, the trial court's evidentiary decisions did not deny him the right to present a defense. *People v. Mesik (On Reconsideration)*, 285 Mich.App. 535, 538; 775 NW2d 857 (2009).

Defendant also argues he was denied the opportunity to present a defense when the trial court refused to take judicial notice of certain information. Defendant points to no authority which requires the trial court to take judicial notice of any fact. In actuality, a trial court's decision to take judicial notice of a fact is generally discretionary. See MRE 201(c); MRE 202(a). It is mandatory only where a party asks the court to take judicial notice of a law and the party gives the court sufficient information to enable it to comply with the request. MRE 202(b). Here, defendant wanted the trial court to take judicial notice of the holding in this Court's prior ruling relating to

-16-

defendant's civil efforts to sue Steelcase. The trial court properly declined because it had not read this Court's opinion and did not want to mischaracterize it. Moreover, defendant wanted judicial notice taken that his civil trial records relating to the Steelcase suit were "readily available" to the public. Defendant offered no proof of the procedures for obtaining court records and the prosecution disputed the availability of records by asserting that records were only available "upon request" and were confined to the building. Because it did not know the practices of the clerk's office or how "readily available" civil court records were to the public, the trial court properly declines to take judicial notice. Moreover, the jury knew of the lawsuit's existence, and the trial court's decision not to take judicial notice did not deny defendant the opportunity to argue the information was publically available and therefore harmless.

We are also not persuaded that the trial court's evidentiary rulings which appeared favorable to the prosecution somehow denied defendant a right to present a defense. A prosecution witness testified, without objection from defense, that the Power Point inaccurately depicted Steelcase. Given that defendant did not object to this testimony during trial, it is inapposite to now argue that hte trial court approved this testimony. MRE 103(a)(1). Moreover, defendant did in fact testify that he created the Power Point with the intent of describing his termination from Steelcase. Accordingly, both parties had the opportunity to explain to the jury how they perceived the information in the Power Point and there can be no claim that the prosecution was afforded an opportunity denied to defendant. Defendant also argues the trial court was inconsistent in its willingness to recognize civil suits as public records. However, defendant's claim conflates two distinct inquiries and confuses two different civil suits. In a pretrial ruling, the court determined that records related to a Jane Doe lawsuit were "public records." In making its pretrial ruling, the trial court determined only that the records of the Jane Doe suit were generally "public records" within the meaning of MRE 803(8). In contrast to this general pretrial determination, at trial, the trial court declined to take judicial notice of the specific holding of this Court's opinion in defendant's civil suit against Steelcase (because the court had not read this Court's opinion) and specific procedures relating to the public availability of the Steelcase court records such as whether the records were "readily available" or available upon request. There is no inconsistency in the trial court's rulings and defendant has not shown how these proper evidentiary rulings denied him the right to present a defense.

-17-

To the extent defendant argues the prosecution's comments during her closing argument were improper, his claim is not contained in his questions presented. It is therefore improperly presented and we need not consider it. MCR 7.212(C)(5). Nevertheless, we note that his claim is without merit. Defendant argues it was improper for the prosecution to argue that there was "no evidence" defendant intended to release only the information contained in the Power Point presentation. However, given that the e-mails consistently referred to a video (not a Power Point presentation), Chrissy continuously claimed her son was working on the material that would be released, and that one of the e-mails specifically attached the presentation as a "part" of what Chrissy was threatening to release, it was reasonable for the prosecution to argue that defendant's claim that he only intended to release the Power Point was unsupported by the evidence. *People v. Callon*, 256 Mich.App 312, 330; 662 NW2d 501 (2003) ("the propriety of a prosecutor's remarks will depend upon the particular facts of each case."). Likewise, the prosecution did not disparage defendant's defense by suggesting he had an "obsession" with Steelcase and continued trying to disseminate negative information about Steelcase during trial. Given that over the course of several years defendant filed a civil suit against Steelcase, repeatedly e-mailed Steelcase executives, created a 38 page Power Point to distribute to Steelcase employees, invented an alter ego to extort money from Steelcase, and then, at trial, proceeded to offer extensive testimony as to how he was wronged by Steelcase, the prosecution's argument was a reasonable inference from the evidence. *Id.* Lastly, in context, the prosecution's admission that the trial was "hard to watch," was a fair response to defendant's pleas to the jury to "please set me free of these charges," "I hope you understand that I've suffered enough already." Based on defendant's plea for sympathy, it was appropriate for the prosecution to argue that defendant's alleged hardships did not excuse the jury from their obligation to return a true and jsut verdict. *People v. Rodriguez*, 251 Mich.App 10, 32; 650 NW2d 96 (2002). Moreover, prejudice from the prosecution's conduct could have been cured with an appropriate jury instruction. *Id.* Indeed, any error was cured when the jury was properly instructed that the prosecution's arguments were not evidence. *Unger*, 278 Mich.App at 235, 237.

*Morrissey*, 2012 WL 4039682, at **6-8.  Again, the analysis done by the appellate court is thorough and complete, and it does not misapply or misinterpret any Supreme Court precedent.

-18-

*Bailey*, 271 F.3d at 655.  The appellate court's analysis shows that the trial court's exclusion of several items of evidence did not prevent Petitioner from presenting a defense and was, at best, harmless error.  *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (noting that the harmless error standard under 28 U.S.C. § 2111 applies to habeas claims pertaining to constitutional errors done by the trial courts).   As a result, Petitioner's third claim fails.

### D. Threat of Injury

Petitioner's next claim is that "[n]o legitimate threat of injury was made, as re-exposing the already public Power Point information was of no consequence to Steelcase and could not cause them injury." PageID.8, 193. In making this claim, Petitioner cites to numerous laws and Michigan court decisions in an attempt to demonstrate that sending e-mails that contain language threatening to expose a Power Point cannot constitute a threat.  PageID.44-50.

While it appears as though Petitioner raised a similar issue to this one in the state courts on direct appeal, the issue is not precisely the same.  *See Morrissey*, 2012 WL 4039682, at *2.  As a result, Respondent has appropriately raised the issue of exhaustion.  PageID.303-306. Exhaustion requires that a petitioner "fairly present" federal claims to the state courts so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon petitioner's constitutional claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

Despite this exhaustion issue, Respondent urges this Court to "save the appellate state courts the useless review of a meritless constitutional claim," and instead address the issue on the merits. PageID.306. Pursuant to 28 U.S.C. § 2254(b)(2), a habeas court may deny an

application on the merits despite "the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Consequently, this Court will review Petitioner's claim on the merits.

Petitioner raises a sufficiency of the evidence argument in claiming that the an element of extortion was not proven at trial. *See* PageID.44-50. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

To prove extortion pursuant to MCL § 750.213, the prosecution must demonstrate that a defendant "(1) either orally or by a written or printed communication, maliciously threatens, (2) to accuse another of any crime or offense, *or* to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, *or* with the intent to compel the person threatened to do or refrain from doing any act against his or her will." *People v. Harris*, 495 Mich. 120, 128-29 (2014).

Here, Petitioner claims that because there was no "threat of injury" to Steelcase because the threat of publicizing a Power Point was too insignificant to constitute extortion. PageID.46-47.  At his trial, Petitioner made a similar oral argument when asking for a directed verdict, but the trial court denied the motion.  PageID.660-680.  Moreover, the Michigan Court of Appeals reiterated the facts as established in the trial transcripts pertaining to the extortion conviction. *Morrissey*, 2012 WL 4039682, at *1.  The appellate court noted that there was evidence admitted at trial showing that Petitioner was sending threatening e-mails under the name "Crazy Chrissy" to Steelcase's board of directors, and in these emails, "Chrissy threatened to release materials related to defendant's termination from Steelcase, which 'she' claimed would be harmful to Steelcase." *Id.* at *1.  In order to stop the release of this information, "Chrissy" demanded $50,000 from Steelcase to "rectify defendant's allegedly wrongful termination by putting him through the severance process." *Id.*  Based on this series of events, and viewing the evidence in the light most favorable to the prosecution, it is clear that a reasonable trier of fact could conclude that Petitioner committed extortion by sending these "Crazy Chrissy" e-mails. *Jackson*, 443 U.S. at 324 n.16.  Therefore, Petitioner's fourth claim fails.

### E. Judicial Bias

Petitioner's fifth claim is that "[t]here is significant evidence that the trial judge was prejudiced against the defendant based on his knowledge of disputed evidentiary facts." PageID.10, 195. In supporting this claim, Petitioner notes that the trial judge in this criminal case was also the same judge that handled his civil suit against Steelcase and Nextel from 2005 to 2007. PageID.51.  Petitioner claims that some of the statements the trial judge made in deciding his civil case (against Petitioner) demonstrate that the judge was biased against him, and that he

agreed that Petitioner should have been fired from Steelcase.  *See, e.g.,* PageID.52 (quoting the judge's decision: "Clearly [the defendant] received the benefit of in essence a free phone subsidized by his employer."; "But wouldn't over time a reasonable person know or should know that they're receiving a service and that the billing is being handled by someone other than himself?").  Moreover, Petitioner states that his previous attorney in his criminal case filed a motion for recusal, but the trial judge denied the motion. PageID.53.

Petitioner raised this claim for the first time in his direct appeal to the Michigan Supreme Court, and then on his motion for relief from judgment to both the trial and appellate courts. PageID.132, 1267, 1276.  As previously mentioned, a habeas court may deny a habeas petition on the merits despite a procedural bar such as exhaustion pursuant to 28 U.S.C. § 2254(b)(2).  Accordingly, this Court will deny Petitioner's claim on the merits for the following reasons.

"The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case." *Love v. Burt*, No. 2:15-CV-12118, 2015 WL 3916098, at *4 (E.D. Mich. June 25, 2015) (citing *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)).  "A claim of judicial bias against a state court judge is analyzed under the standard announced in *Liteky v. United States*, 510 U.S. 540 [] (1994), in which the Court held that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 832 (W.D. Mich. Mar. 31, 2008) (citing *Liteky*, 510 U.S. at 551-55 (noting that judges' opinions "as a result of what they learned in earlier proceedings" do not constitute bias or prejudice against a person or case) and *Corbett v. Bordenkircher*, 615 F.2d 722, 723-24 (6th Cir. 1980) ("Absent a showing of

-22-

actual bias, there is no rule that a judge must disqualify themselves where they prosecuted the defendant in an earlier proceeding.")).

For a habeas petitioner to prevail on a claim of judicial bias, he must show "either actual bias or the appearance of bias creating a conclusive presumption of actual bias." *Love*, 2015 WL 3916098, at *4 (citing *United States v. Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997)); *see also Liteky*, 510 U.S. at 552 (noting that the judge must "display a deep-seated favoritism or antagonism that would make a fair judgment impossible."). "Only in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required." *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006). In reviewing such a claim, the habeas court must initially presume that the trial judge properly went about his or her official duties. *Love*, 2015 WL 3916098, at *4.

Petitioner's claim fails the *Liteky* standard for judicial recusal. While Petitioner has cited to four statements made by the judge in Petitioner's previous civil case against Steelcase, the comments do not demonstrate "the degree of antagonism necessary for him to succeed in a claim of judicial bias." *See Rockwell*, 559 F. Supp. 2d at 832. The record does not show that the trial judge treated Petitioner unfairly and, in fact, the trial transcripts show that the judge was extremely patient with Petitioner, especially given Petitioner's decision to proceed to trial *pro se*. *See, e.g.,* ECF No. 9-23; 9-24; 9-25; 9-26; 9-27; 9-28. Consequently, Petitioner's claim of judicial bias fails.

### F. Sentencing

Petitioner's next claim is that "[t]he [trial] court abused its discretion in sentencing the defendant in OV 13 at 25 points because there were only restatements of the same

alleged threat, not several independent ones." PageID.11, 196.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at \*2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a

-24-

sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Koras,* 123 Fed. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *see also Koras,* 123 Fed. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence of five to twenty years clearly is not so disproportionate to the crime as to be arbitrary or shocking.  *Doyle*, 347 F. Supp. 2d at 485; *see* MCL § 750.213 (noting that a person convicted under this statute shall be imprisoned "not more than 20 years."); *see, e.g., People v. Maranian*, 359 Mich. 361, 363 (1960) (sentencing a defendant to three and a half to twenty years for extortion); *People v. Bosca*, 310 Mich. App. 1, 6 (2015) (sentencing defendant to fifty-seven months to twenty years for extortion); *People v. Markham*, No. 303734, 2012 WL 6178273, at *1 (Mich. Ct. App. Dec. 11, 2012) (sentencing defendant to seventy-five months to twenty years for extortion); *People v. Poindexter*, 138 Mich. App. 322, 324 (1984) (sentencing defendant to five to twenty years).

Furthermore, the state-court's rejection of Petitioner's objection to scoring OV 13 at the twenty-five points (PageID.833) during sentencing was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent:

> Likewise, the objection to Offense Variable 13 scored at 25 points is, I find, without merit. The defendant says the score should be zero because there was only one charge. But, as he also observes at page ten of 16 in that submission, the purpose was to hope that the executive would at least read one, each one being coequal to the other, all being the same, insistent, directed attempt to get their attention to submit to what Crazy Chrissy wants.

> Each e-mail was a separate crime and each was a separate use of a computer to accomplish – extort – a unitary extortion attempt and, consequently, 25 points is correct.

PageID.834-835; *see also* 28 U.S.C. § 2254(d).  Moreover, the Michigan Court of Appeals heard, and denied, this claim on Petitioner's direct appeal:

> Defendant challenges the scoring of offense variables (OVs) 10, 13, and 19. Defendant preserved his scoring claims by objecting to the scoring of these variables during sentencing. MCR 6.429(C); *People v. McGuffey*, 251 Mich.App 155, 164-166; 649 NW2d 801 (2002). Scoring of offense variables is reviewed for abuse of discretion to determine if the record offers adequate evidence in support of the score. *People v. Wilson*, 265 Mich.App 386, 397; 695 NW2d 351 (2005). Scoring decision supported by "any evidence" will be upheld. *People v. Hornsby*, 251 Mich.App 462, 468; 650 NW2d 700 (2002). Findings of fact made by the trial court during sentencing are reviewed for clear error. *People v. Osantowski*, 481 Mich. 103, 111; 748 NW2d 799 (2008). Scoring decisions may involve statutory interpretation, which is a question of law to be reviewed de novo. *Wilson*, 265 Mich.App at 297.

> . . . .

> B. OV 13

-26-

The trial court did not abuse its discretion in scoring OV 13 at 25 points. OV 13 must be scored [at] 25 points when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). In determining whether a pattern of activity exists, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Multiple concurrent offenses arising from the same incident are properly used in scoring OV 13. *People v. Harmon*, 248 Mich.App 522, 532; 640 NW2d 314 (2001). In deciding whether an offense was a "crime against a person," it is appropriate to rely on the six named offense category designations found in MCL 777.5. *People v. Bonilla-Machado*, 489 Mich. 412, 416; 803 NW2d 217 (2011). In this case, defendant was convicted of extortion, which is a crime against a person, MCL 777.16l, and using a computer to commit a crime, which is a variable category offense, MCL 777.17c. Because the underlying offense involves a crime against a person, using a computer to commit a crime is also a "crime against a person." MCL 777.17c(2). As crimes categorized as a "crime against a person," both these convictions were properly scored under OV 13. *Bonilla-Machado*, 489 Mich. at 416.

In addition to these two crimes against a person, the trial court determined that defendant committed numerous additional acts of extortion and using a computer to commit a crime. We agree. Following the first e-mail (which constituted extortion and using a computer to commit a crime), defendant sent additional e-mails in which he threatened to raise his price and "spread his story much more than we are saying already" if Steelcase did not cease contact with the authorities. Likewise, in another e-mail, Chrissy stated "[m]ake no mistake, this video will go out all over the internet on Thursday should Steelcase not come through." Because each instance of extortion is complete at the time the threat was made, each additional threat and demand by defendant can be viewed as an independent act of extortion. Similarly, because defendant used a computer, each additional extortion e-mail was also another instance of using a computer to commit a crime. Because defendant committed more than three crimes against a person, he was properly scored [at] 25 points under OV 13.

*Morrissey*, 2012 WL 4039682, at **9-10. The appellate court's decision is thorough and

complete, and it does not improperly apply federal law to the facts of Petitioner's case. Overall,

because Petitioner has not shown that his sentencing score was so egregious as to amount to a denial of due process, this claim is not cognizable on habeas review.  *See Koras,* 123 Fed. App'x at 213.

### G. Restitution

Petitioner's final claim is that "[t]he trial court errored [sic] when it awarded Steelcase full restitution for investigation expenses they chose to spend that did not give rise to the conviction." PageID.13, 198.  Specifically, Petitioner claims that it should not have to pay Steelcase $23,505 in legal fees used to find out who Crazy Chrissy was because it was Steelcase's decision to use a private investigator, rather than the police, to do this investigative work. PageID.62-65.

Notably,  Petitioner raised his claim for the first time to the Michigan Supreme Court on direct appeal (PageID.174), and the court did not grant leave to appeal the issue (PageID.132).  Petitioner's claim was not "fairly" presented to the state courts in this manner. *See Farley v. Lafler*, 193 Fed. App'x 543, 549 (6th Cir. 2006).  Subsequently, Petitioner then raised this claim in the trial court on his motion for relief from judgment in the trial and appellate courts (PageID.1267, 1276), but this was denied because Petitioner failed to provide "good cause" for failing to raise this claim on his direct appeal (PageID.1256).  Petitioner did not appeal the denials of his motion for relief from judgment to the Michigan Supreme Court, meaning he did not filly exhaust his claims.  Regardless, this Court will deny Petitioner's unexhausted claim on the merits for the reasons below, in order to "avoid further litigation for the sake of efficiency." *Farley*, 193 Fed. App'x at 549 (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State.")).

Petitioner does not state a claim upon which habeas relief can be granted. "Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus." *Mullins v. Birkett*, No. 2:09-CV-12515, 2010 WL 764386, at *3 (E.D. Mich. Mar. 4, 2010) (citing *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995)). "Liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty sufficient to warrant habeas relief." *Colvin v. McKee*, No. 1:10-CV-197, 2010 WL 1558686, at *1 (citing *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984)). "Because the appropriate relief would be an amendment of the court's order of restitution and not release from custody, the grant of a writ of habeas corpus or other post conviction relief would be inappropriate." *Mullins*, 2010 WL 764386, at *3 (citing *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998)).

Petitioner's restitution order is not "a sufficient enough restraint on his liberty" to justify habeas relief. *Mullins*, 2010 WL 764386, at *3. Accordingly, this claim is not cognizable on habeas review, and is denied.

III.

Overall, this Court concludes that all of Petitioner's claims are without merit. Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court examined each of Petitioner's claims under the *Slack* standard and concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, this Court **DENIES A CERTIFICATE OF APPEALABILITY** as to each issue raised by Petitioner.

For the same reasons the Court dismissed this action, the Court will certify that any appeal by Petitioner from the Court's decision and judgment would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is hereby **DENIED**.

In summary, Petitioner's habeas application (ECF No. 7), filed pursuant to 28 U.S.C. § 2254, is **DISMISSED WITH PREJUDICE**. A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED**.


_/s/ *R. Allan Edgar*_____

Dated:  3/24/2016                R. ALLAN EDGAR
                                 UNITED STATES DISTRICT JUDGE